UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Donald R. Shepard,

    Plaintiff,

v.                                                                       Civil Action No. 2:13-cv-172

Commissioner of Social Security,

    Defendant.


**OPINION AND ORDER**
(Docs. 8, 11)

    Plaintiff Donald Shepard brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") finding that he was not disabled and not entitled to Supplemental Security Income ("SSI").  Pending before the Court are Shepard's motion to reverse the Commissioner's decision (Doc. 8), and the Commissioner's motion to affirm the same (Doc. 11).  For the reasons stated below, the Court DENIES Shepard's motion, and GRANTS the Commissioner's motion.

**Background**

    Shepard was 40 years old on his initial alleged disability onset date of June 21, 2008.  His work history is in the construction field, but he has not worked since 2001.  (AR 178, 559, 875.)  In October of that year, he left his job operating heavy construction equipment after he was injured in a motorcycle accident.  (AR 875.)

Shepard had behavioral problems in school and dropped out in the tenth grade. (AR 559, 875.)  He later attained a GED while incarcerated.  (AR 559.)  During the alleged disability period, Shepard resided either with friends, his brother and his family, or by himself in a camper.  (AR 36, 559, 587, 875.)  He is divorced, and has two children who were approximately ages 15 and 21 during the alleged disability period and resided out of state with their mother.  (AR 559, 587, 874–75.)  He has a history of alcohol and cocaine dependence starting at age 17.  (AR 559, 875.)  A number of legal charges have been filed against him, and he has served approximately 15 years in prison altogether, starting at age 15, for charges including domestic assault, theft of a vehicle, driving without a license, serving alcohol to minors, and driving while intoxicated.  (*Id.*)

Shepard suffers from numerous medical problems mostly arising from two motorcycle accidents, the first in October 2001 and the second in June 2008.  Those medical problems include chronic knee pain, pain in his left arm/shoulder, and difficulty thinking/remembering.  (AR 524, 558.)  In the 2008 accident, Shepard sustained multiple fractures, requiring surgeries on his shoulder, left elbow, left jaw, and right lower leg; leaving him with hardware in his left elbow and right leg.  (AR 210–11, 649, 666–68, 837.)  He also suffers from depression, largely due to his inability to function like he could before the accident.  (AR 878.)  He testified at the administrative hearing that he cannot walk for long distances or stand for extended periods but is able to sit for 45–60 minutes at a time.  (AR 40–42.)

In July 2008, Shepard filed applications for SSI and Disability Insurance Benefits ("DIB"), alleging disability starting on June 21, 2008, the date of his second motorcycle

accident.  (AR 129.)  His DIB claim was denied because he failed to meet the insured status requirements.  (*Id.*)  The SSI claim was adjudicated and allowed on January 15, 2009 due to a severe impairment plus vocational factors, but it was denied on January 27, 2009 either for failure to cooperate or failure to give permission to contact financial institutions.  (AR 130.)  Shepard did not appeal those decisions regarding his 2008 claim (referred to herein as "the prior claim").

In September 2009, Shepard filed another SSI application, alleging disability due to chronic knee pain, memory problems, difficulty sleeping, standing and walking limitations, and myodysplasia syndrome causing joint soreness and stiffness.  (AR 53, 119–24, 153.)  This application was denied initially and upon reconsideration, and Shepard timely requested an administrative hearing.  The hearing was conducted on November 10, 2011 by Administrative Law Judge ("ALJ") James D'Alessandro.  (AR 28–44.)  Shepard appeared and testified, and was represented by an attorney.  On November 23, 2011, the ALJ issued a decision finding that Shepard was not disabled since September 1, 2009, the date his application was filed.  (AR 15–22.)  Thereafter, the Appeals Council denied Shepard's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)  Having exhausted his administrative remedies, Shepard filed the Complaint in this action on June 10, 2013.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

4

Employing this sequential analysis, ALJ D'Alessandro first determined that Shepard had not engaged in substantial gainful activity since his application date of September 1, 2009.  (AR 17.)  At step two, the ALJ found that Shepard had the severe impairment of status post fracture of upper and lower limbs.  (*Id.*)  Conversely, the ALJ found that Shepard's depression was non-severe, given that it did not have more than a minimal effect on Shepard's ability to do basic physical or mental work activities.  (AR 17–18.)  At step three, the ALJ found that none of Shepard's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 18.)  Next, the ALJ determined that Shepard had the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 416.967(a).  (*Id.*)  Given this RFC, the ALJ found that, although Shepard was unable to perform his past relevant work, he could perform other jobs existing in significant numbers in the national economy.  (AR 21–22.)  The ALJ concluded that Shepard had not been under a disability since September 1, 2009, the date his application was filed.  (AR 22.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

5

substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## **Analysis**

Shepard contends that the ALJ erred in failing to consider whether he was disabled starting on June 21, 2008, the onset date alleged in his prior claim; and that the ALJ

should have considered reopening that claim.[1] (Doc. 8-1 at 3, 5.) Shepard further claims that he was "clearly disabled on June 21, 2008 when he was involved in the [motorcycle] accident," and that the ALJ "de facto reopened" the prior claim by considering the period from June 2008 until the date of the ALJ's decision. (*Id.* at 6.) Given this reopening of the prior claim, Shepard argues that a presumption of continued disability should have governed the ALJ's analysis of the current claim for one year following the January 2009 disability allowance, requiring the ALJ to determine when, if at all, Shepard achieved medical improvement such that his disability ended. (Doc. 12 at 3; Doc. 14 at 2–3.) Additionally, Shepard asserts that the ALJ erred in failing to evaluate his left arm impairment, which Shepard claims is relevant to the current claim regardless of whether the prior claim was reopened. (Doc. 8-1 at 7; Doc. 12 at 4–6.)

In response, the Commissioner concedes that the ALJ "de facto" reopened the prior claim and considered the period from June 2008 through the date of the decision. (Doc. 11 at 7; Doc. 13 at 2 n.1; *see also* Doc. 12 at 2; Doc. 14 at 1.) However, the Commissioner asserts that regardless of the onset date, Shepard was not disabled for any 12-month period and thus the presumption of continued disability does not apply. (Doc. 11 at 7; Doc. 13 at 2.) The Commissioner also contends that the presumption does not apply because Shepard never began receiving disability benefits, given his failure to cooperate with the Agency's request for financial information. (Doc. 13 at 2.) Further, the Commissioner claims that, even if the presumption of continued disability applied, it

---

[1] Notably, at the November 2011 administrative hearing, Shepard did not request that the ALJ reopen the prior claim, and advised that he was not aware of any other evidence that should be obtained before a decision was made on the current claim. (AR 30.)

has been "dismantled" due to Shepard's "subsequent improvement." (*Id.*) Finally, the Commissioner argues that substantial evidence supports the ALJ's evaluation of Shepard's left arm impairment. (Doc. 11 at 9–11.)

## I.  ALJ's Analysis of Prior and Current Claims

As explained above, the record demonstrates that Shepard's July 2008 SSI claim was adjudicated and "allow[ed]" on January 15, 2009 due to a severe impairment plus vocational factors. (AR 130.) The claim was denied, however, on January 27, 2009 either due to Shepard's failure to cooperate or his failure to give permission to contact financial institutions. (*Id.*) Shepard did not appeal that denial.

The parties agree that, in deciding the current claim, the ALJ constructively reopened Shepard's prior (July 2008) claim, reviewing the entire record and considering evidence from the date of the June 2008 motorcycle accident through the date of his November 2011 decision.[2] *See Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003) ("[i]f the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived") (internal quotation marks omitted). Some circuits have held that in cases where there was a prior finding of disability, the Commissioner has the burden of coming forward with evidence that a claimant's condition improved before terminating disability benefits. *See, e.g.*, *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir. 1983); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984). In so holding,

---

[2] The ALJ referenced evidence from the prior period (between June 2008 and September 2009) both in his written decision (AR 17–18, 20–21) and at the administrative hearing (AR 32).

8

those circuits recognize that a presumption of continuing disability arises from the initial determination of disability, and that, in the absence of evidence that the claimant's condition has improved, the claimant continues to be disabled. *Id*. (*accord Dotson v. Schweiker*, 719 F.2d 80, 82 (4th Cir. 1983); *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983); *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982); *Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973)).

Even when a claimant is entitled to the benefit of a presumption that his disability remains, however, "the burden is still on h[im] to prove h[is] case." *Patti v. Schweiker*, 669 F.2d 582, 587 (9th Cir. 1982). All the presumption does is impose on the Commissioner "a burden to come forward with evidence that [the claimant's] condition has changed." *Id.* As Judge Weinstein explained:

> As long as the original condition continues unimproved . . .[,] the presumption of disability may be relied upon by the claimant. As a result[:] [(1)] the [Commissioner] . . . may not base a termination of benefits on the ground that the original disability determination was mistaken, and (2) proof of the continuance of the original medical condition should automatically lead to a continuation of the benefits absent substantial evidence to the contrary.

*Edwards v. Sec'y of Dept. of Health and Human Servs.*, 572 F. Supp. 1235, 1240 (E.D.N.Y. 1983); *see Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982) ("we are unaware of any case in which the [Commissioner's] termination of benefits previously awarded has been upheld in the absence of substantial evidence that the recipient's disability had ended"). The critical inquiry is whether the ALJ made "clear findings based upon relevant evidence of changes which have occurred in the claimant's condition," rather than merely reevaluating "stale evidence" from the claimant's prior

9

file. *Northrup v. Schweiker*, 561 F. Supp. 1240, 1242 (W.D.N.Y. 1983); *see Mersel v. Heckler*, 577 F. Supp. 1400, 1405 (S.D.N.Y. 1984) ("the requirement that the [Commissioner] show some improvement in claimant's condition provides a more explicit focus for review, concentrating the determination in termination hearings on a contrast between fresh evidence that might show a change in claimant's health, and previous evidence on which a determination of disability had been based"); *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1310-11 (D. Kan. 2007) ("The court does not imply that the medical improvement standard must be applied in [all cases where plaintiff was found eligible for benefits], merely that the decision must include *an explanation of the basis from which one might conclude that plaintiff is not presently disabled* although she was earlier determined to be disabled.") (emphasis added).

    Here, the ALJ made clear findings regarding changes in Shepard's condition since the prior claim's disability onset date of June 2008, and based those findings on fresh evidence dated from December 2008 until the date of the ALJ decision in November 2011. For example, citing to a March 2010 report from consulting examiner Dr. Lorne Babb, the ALJ noted that Shepard had not received any "continuing treatment" for a closed head injury (AR 20 (citing AR 871)). The ALJ also stated that Shepard "continued to improve" since he was evaluated by examining consultant Dr. Robert Zelazo in December 2008. (AR 20 (citing AR 585 and referencing AR 868–70).) The record demonstrates that Shepard's condition significantly improved from the period immediately after his June motorcycle 2008 accident and the months following, until the date of the ALJ's decision. (*See, e.g.*, AR 584, 598, 869, 878, 904.)

Specifically, although Shepard was prescribed Vicodin and Dilaudid for pain in July 2008 (AR 450, 445), as the ALJ noted, Shepard was taking no pain medication in December 2008, approximately six months after the accident (AR 20, 584).[3]  About a month later, in January 2009, agency consultant S. Green stated that she expected "continued improvement" and thus recommended that a "short 18-month diary" be recorded.[4]  (AR 598.)  *See* 20 C.F.R. § 416.990(b)(1), (c) (stating that a "continuing disability review" will be conducted if a claimant is scheduled for a "medical improvement expected diary review," which occurs when the claimant's impairment(s) "is expected to improve," and noting that cases involving fractures are the type of cases "likely to be scheduled for medical improvement").  In July 2009, a little over a year after the accident, a St. Albans Health Center examination note records that Shepard had normal coordination, muscle strength, and tone.  (AR 641.)  A March 2010 examination note states that, although Shepard had slightly decreased pronation and supination, he had normal range of motion in his lower extremities and hips, normal knee extension, and normal grip strength.  (AR 869.)  In September 2011, Shepard was taking no pain medications other than Aleve and ibuprofen.  (AR 20, 904; *see also* AR 171–72 (Function Report recording that Shepard was taking no medication).)  In a Function

---

[3] Consulting examiner Dr. Zelazo stated: "Shepard had taken narcotic pain medication around the time of the initial surgery, but he states that he is not using any medication for pain at this time," despite reporting "significant discomfort that interferes with ambulation."  (AR 584.)

[4] Also noteworthy, even in January 2009, only approximately six months after the June 2008 accident, agency consultant Green opined that Shepard was able to stand and/or walk for at least two hours and sit for about six hours in an eight-hour workday, consistent with a sedentary work capacity. (AR 592.)  *See* SSR 83-10, 1983 WL 31251, at *5 (1983) (For sedentary work, "standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

Report, Shepard reported that he was able to sit and watch television, prepare simple meals, vacuum, do the dishes, and walk or ride in a car to the store to buy food. (AR 170–74.) The ALJ correctly observed that these activities are consistent with a sedentary work capacity. (AR 20–21.)

Shepard asserts that remand is necessary for "clarification" of the ALJ's decision, and to further develop the record. (Doc. 12 at 4.) But Shepard fails to identify any particular evidence that the ALJ neglected to consider, and the record demonstrates that the ALJ considered all the relevant evidence from the periods under review in both the prior and current claims. At the administrative hearing, Shepard's counsel stated that he was not aware of any other evidence that should be considered. (AR 30.) Overall, the record—although over 900 pages long—contains little contemporary medical evidence. Moreover, the ALJ accurately noted that "no treating medical professional opined limitations beyond [a sedentary RFC]." (AR 21.) The Second Circuit has held that the ALJ may consider such a lack of evidence in determining a claimant's claim, stating: "The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983).

For these reasons, even if the "presumption of continued disability" applies, substantial evidence supports the ALJ's determination that Shepard has showed ongoing improvement since his June 2008 accident and was not disabled for a 12-month period. *See* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Shepard's argument hinges on the assertion that evidence from his prior claim is

12

favorable to his current claim, but he points to no specific opinion or other evidence from either period which demonstrates that he had limitations more disabling than the ALJ found for a period of 12 months or more.

## II.     ALJ's Analysis of Left Arm Impairment

Nor does the record support Shepard's contention that his left arm impairment was disabling for a period of 12 months or more.  As the ALJ noted, although a December 2008 evaluation revealed a markedly diminished grip strength and other limitations (AR 20, 585), more recent medical evidence demonstrates that Shepard improved since then, until in March 2010, he was noted to have normal grip strength and biceps strength of 4+/5 (AR 20, 872).  In May 2010, psychological consultant Dr. Theodore Williams recorded that, although Shepard stated he could not lift heavy objects due to problems with his left elbow, he could reach, cook, clean his house, use a computer a little, and sit for extended periods of time.  (AR 878.)  Also in May 2010, after reviewing the relevant evidence, agency consultant Margie Morley found that Shepard had no manipulative limitations.  (AR 48, 52.)

The only evidence Shepard relies on in support of his argument that his left arm impairment was disabling are the January 2009 report of reviewing agency consultant S. Green (AR 594) and the March 2010 evaluation of consulting examiner Dr. Babb (AR 869).  But the ALJ considered these reports in his decision (AR 21) and Shepard identifies no deficiencies in the ALJ's analysis.  Specifically, the ALJ gave only "moderate weight" to Green's 2009 opinion, including the opinion that Shepard was limited in his ability to do handling tasks, on the grounds that "[a]dditional evidence was

13

received after this opinion was formed [which] documents that [Shepard] can perform work at the sedentary exertional level." (*Id.*) As explained above, substantial evidence supports this finding.

## Conclusion

For these reasons, the Court DENIES Shepard's motion (Doc. 8), GRANTS the Commissioner's motion (Doc. 11), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 7th day of May, 2014.

/s/ John M. Conroy<br>
John M. Conroy<br>
United States Magistrate Judge